IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **DESMOND DWAYNE TURNER,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **2:19-cv-08048-LSC** |
| | ) | **2:15-cr-00396-LSC-JHE-1** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OF OPINION**

**I.   Introduction**

Pursuant to 28 U.S.C. § 2255 ("§ 2255"), Desmond Dwayne Turner ("Petitioner" or "Turner") filed with the Clerk of this Court a motion to vacate, set aside, or otherwise correct his sentence of 240 months' imprisonment. (Doc. 1.) The United States responded in opposition to the motion. (Doc. 5.) For the reasons set forth below, Turner's § 2255 motion is due to be denied and the present action dismissed.

**II.   Background**

  **A.   Factual Background**

On September 21, 2015, a United States Marshal task force executed an arrest warrant for a state offense against Turner at the hotel room in which Turner had

been renting for forty days. (Cr. Doc. 21 at 3.)[1] As officers entered the hotel room, Turner spontaneously stated, "There's a gun in there. It isn't mine, if you find it." (*Id.* at 4.) Turner then gave verbal and written agreement for the officers to search the room. (*Id.*) The officers found a loaded firearm and plastic bags containing pills, pill remnants, and powder in the nightstand drawer. (*Id.*) After waiving his Miranda rights, Turner identified the substances in the plastic bags as heroin and Xanax. (*Id.*) Turner also stated that the firearm belonged to a man named Jeff Rozell, who Turner claimed had occasionally stayed with him in the hotel room, though Turner stated that Rozell had not stayed there in the days preceding Turner's arrest. (*Id.* at 4–5.) Turner also said that he was on probation[2] and knew that he was not permitted to possess a firearm. (*Id.*) At the time of his arrest, Turner had been convicted of the five felony offenses listed in the indictment[3] for the criminal case underlying the present action. (Cr. Doc. 21 at 5.)

   B.   **Charges and Sentencing**

In December 2015, a grand jury indicted Turner for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Cr. Doc. 1 at 1–2.) Turner retained

---

[1] "Cr. Doc." refers to an entry on the docket sheet in the underlying criminal case, *United States v. Turner*, No. 2:15-cr-00396-LSC-JHE-1.
[2] Turner mistakenly said that he was on probation. In his § 2255 petition, Turner correctly states that he was on supervised release for a prior conviction at the time of his arrest. (Doc. 1 at 20.)
[3] (Cr. Doc. 1 at 1–2.)

Susan James ("James") as his counsel. (Cr. Doc. 6.) Turner entered, and this Court accepted, a plea of guilty to the charge in the indictment[4] on January 29, 2016. (Cr. Doc. 21; *see also* Cr. Doc. 53 at 23–24.) Pursuant to his plea agreement with the Government, Turner agreed that "the facts stated [in the plea agreement] are substantially correct and that the Court can use these facts in calculating [his] sentence." (Cr. Doc. 21 at 5.) At a sentencing hearing on March 2, 2017, this Court sentenced Turner to 240 months' imprisonment followed by sixty months of supervised release. (Cr. Doc. 55 at 41–44.) This Court entered the judgment against Turner on March 6, 2017. (Cr. Doc. 40.)

    **C.**     **Appeal**

Turner, still retaining James as his counsel, filed a timely appeal of his sentence on March 19, 2017. (Cr. Doc. 43.) The Eleventh Circuit Court of Appeals affirmed this Court's decision. (Cr. Doc. 57.) Turner subsequently filed a petition for a writ of certiorari, which the Supreme Court denied on November 14, 2018. (Cr. Doc. 58.)

    **D.**     **§ 2255 Proceedings**

Turner executed the present § 2255 motion on November 7, 2019, and the

---

[4] (Cr. Doc. 1.)

Clerk of this Court entered the motion into the record on November 14, 2019.[5] (Doc. 1.) Liberally construing the claims in his § 2255 petition,[6] Turner argues that James rendered ineffective assistance of counsel by failing to adequately apprise Turner of the "intent" element regarding possession of a firearm. (Doc. 1 at 4, 17–36.) Turner asserts that, but for his misunderstanding of the requisite elements of the charge against him, he would not have pleaded guilty. (*Id.*)

### III.   Timeliness and Non-Successiveness of Hall's § 2255 Motion

The Supreme Court denied Turner's petition for writ of certiorari on November 14, 2018. (Cr. Doc. 58.) Turner filed the instant § 2255 motion on November 7, 2019, within one year after the date in which his conviction became final, making his filing timely. *See* 28 U.S.C. § 2255(f)(1).

Turner is bringing his first § 2255 motion, so it is not "second or successive" within the meaning of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. at §§ 2255(h), 2244(b)(3)(A).

### IV.   Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for

---

[5] Applying the "mailbox rule," the Eleventh Circuit deems a prisoner's § 2255 motion as filed upon the "date that he delivered it to prison authorities for mailing, presumptively, . . . the day that he signed it." *Jones v. United States*, 304 F.3d 1035, 1038 n.7 (11th Cir. 2002) (per curiam).
[6] Because Turner is a *pro se* litigant, this Court liberally construes his pleadings. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).

collateral attack on final judgments pursuant to 28 U.S.C. § 2255 are limited. A petitioner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988)).

In litigation stemming from a § 2255 motion, "[a] hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the [movant's] allegations are affirmatively contradicted by the record." *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (quoting *Guerra v. United States*, 588 F.2d 519, 520–21 (5th Cir. 1979)). However, an evidentiary hearing is appropriate if, "accept[ing] all of the petitioner's alleged facts as true," the movant has "allege[d] facts which, if proven, would entitle him to relief." *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991)

(quoting *Agan v. Dugger*, 835 F.2d 1337, 1338 (11th Cir. 1987) and *Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir. 1989)).

V.  **Discussion**

Turner's claim that he is entitled to relief relies solely on his allegation that James rendered ineffective assistance of counsel. (Doc. 1.) Turner's assertion is meritless and will be dismissed without a hearing. Claims of ineffective assistance of counsel may be raised for the first time in a § 2255 motion and are therefore not subject to procedural bar for failing to raise them on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). An ineffective assistance of counsel claim has two components: first, the petitioner "must show that the counsel's performance was deficient;" second, the petitioner "must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the first component, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The second component is satisfied only when the defendant shows that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In examining counsel's performance, the Court should be "highly deferential." *Id.* at 689. The Court must make "every effort . . . to eliminate the

distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* The Court must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*; *see Bell v. Cone*, 535 U.S. 685, 702 (2002) (holding that "tactical decision[s] about which competent lawyers might disagree" do not qualify as objectively unreasonable). A petitioner who seeks to overcome this presumption does not carry his burden by offering bare accusations and complaints; rather, he "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Where a petitioner fails to show that his counsel's performance fell below an objective standard of reasonableness, the court need not address the issue of prejudice. *See Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000). Where the court does consider this prong, the petitioner must show that counsel's errors were prejudicial and "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. This burden is met by establishing by a reasonable probability that the outcome of the proceeding would have been different but for counsel's errors. *Williams v. Threatt*, 529 U.S. 362, 391–93 (2000); *Strickland*, 466 U.S. at 691.

To establish prejudice in the context of a guilty plea, a movant must establish that, but for his counsel's unprofessional errors, "he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 53, 59 (1985). In the guilty plea context, there is a strong presumption that an attorney's actions are reasonable. *Arvelo v. Sec'y, Fla. Dep't of Corr.*, 788 F.3d 1345, 1348–49 (11th Cir. 2015). "We recognize that in deciding whether to enter a plea, defense lawyers carefully balance both 'opportunities and risks' without fully knowing the strength of the [prosecution's] case. Therefore, we must, as we do for all *Strickland* claims, afford 'substantial deference' to a lawyer's strategic choices." *Id.* (citing *Premo v. Moore*, 562 U.S. 115, 124 (2011)). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. The defendant must show "that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

As further analyzed below, James did not render ineffective assistance for advising Turner to plead guilty. James's assessment that Turner had in fact had constructive possession of the firearm was reasonable, and Turner cannot

demonstrate that the outcome of his sentence nor appeal were adversely affected.

### A.   Motion to Suppress

The indictment against Turner charged him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), which prohibits any person who has been convicted of "a crime punishable by imprisonment for a term exceeding one year" from possessing any firearm or ammunition affecting interstate commerce. (Cr. Doc. 1.) James filed a motion to suppress statements that Turner made to law enforcement officers and evidence that the officers seized from the hotel room, including the firearm underlying the conviction and sentence presently at issue. (Cr. Doc. 10 at 1–2, 4.) James argued that the officers' search of Turner's hotel room and seizure of the evidence therein exceeded the scope of the arrest warrant and thus violated Turner's Fourth Amendment rights. (*Id.* at 2.) The Government responded in opposition to the motion. (Cr. Doc. 14.)

On January 28, 2016, this Court held a hearing on the motion. (Cr. Doc. 60.) The Government called two of the officers present at Turner's arrest to testify, both of whom James thoroughly cross examined. (*Id.* at 4, 14–31, 56–64.) The Government also played an audio recording of Turner at the time of his arrest regarding his consent to the search of his hotel room. (Cr. Doc. 60 at 51–53.) James reiterated the arguments in the motion to suppress (cr. doc. 10) and further argued

that this Court should weigh the conflicting testimony with respect to the form that Turner signed consenting to the search of his hotel room in Turner's favor. (Cr. Doc. 60 at 65.) At the conclusion of the hearing, this Court determined that Turner gave the officers consent to search his hotel room and accordingly denied the motion[7] to suppress. (*Id.* at 66; *see also* Cr. Doc. 19.)

James's efforts with respect to the evidence surrounding Turner's possession of the firearm — namely, the motion to suppress (cr. doc. 10) and her oral arguments at the hearing (see cr. doc. 60 at 14–30, 56–65) — wholly refute Turner's allegations of ineffective assistance. James's performance neither fell below an objective standard of reasonableness nor prejudiced Turner's defense. James adequately argued for the suppression of the evidence, and her conduct was not deficient merely because this Court denied the motion. Moreover, this Court stated during the hearing that "it's clear . . . that there was consent. It's clear . . . that the motion to suppress should be denied" (cr. doc. 60 at 66), suggesting that, in light of the evidence, James could not have swayed this Court's decision. James did not prejudice Turner's defense with regard to suppression of the evidence, then, because the result would have remained the same irrespective of James's performance.

---

[7] (Cr. Doc. 10.)

B.   **Guilty Plea**

Turner's argument that James rendered ineffective assistance of counsel because she failed to investigate the law surrounding possession of a firearm also fails. Turner essentially contends that James misunderstood the requisite elements of "possession" and consequently advised Turner to plead guilty on the basis of that misunderstanding despite his lack of intent. (Doc. 1 at 4, 17–36.) Turner asserts that, but for James's allegedly deficient performance in failing to correctly advise him on the legal elements of possession, he would have insisted on going to trial. (Doc. 1 at 18.) However, the legal premise on which Turner bases his argument is incorrect and thus would have failed at trial. Consequently, James's performance was not ineffective because she correctly informed Turner of the law and advised him accordingly.

"Possession of a firearm may be either actual or constructive." *United States v. Iglesias*, 915 F.2d 1524, 1528 (11th Cir.1990). "Constructive possession of a firearm exists when a defendant does not have actual possession but instead knowingly has the power or right, and intention to exercise dominion and control over the firearm." *United States v. Perez*, 661 F.3d 568, 576 (11th Cir. 2011). Constructive possession requires the Government to prove "that the defendant (1) was aware or knew of the firearm's presence and (2) had the ability and intent to later exercise dominion and

control over that firearm." *Id.* (citing *United States v. Beckles*, 565 F.3d 832, 841 (11th Cir. 2009)). "[A] court may find constructive possession by finding ownership, dominion, or control over the contraband itself or dominion or control over the premises . . . in which the contraband was concealed." *United States v. Ochoa*, 941 F.3d 1074, 1104 (11th Cir. 2019) (quoting *United States v. Derose*, 74 F.3d 1177, 1185 (11th Cir. 1996)) (alterations in original). "The fact that other people had access to or may have also occupied the residence does not make the above evidence insufficient." *Ochoa*, 941 F.3d at 1104. A person renting a hotel room exercises dominion and control over the room. *See United States v. Albury*, 782 F.3d 1285, 1294 (11th Cir. 2015) (finding that the petitioner exercised sufficient control over a hotel room for conviction as a felon in possession of a firearm that law enforcement officers found in the room because the petitioner "was the only person who dealt with the hotel when renting the rooms, and many of his personal effects were found there, strongly indicating that he not only resided in the rooms, but that he retained ultimate control over their use").

James advised Turner consistently with the foregoing rules of law. Turner rented the hotel room under his own name and checked in using his I.D. (*See* Cr. Doc. 60 at 5–6.) At the time of his arrest, Turner had been renting the hotel room for approximately forty days. (Doc. 1 at 20.) Turner does not allege that anyone other

than himself dealt with the hotel staff regarding his rental of the room. Another individual had stayed in the room with Turner "sporadically" but had not stayed in the room for several days prior to Turner's arrest. (*Id.*) Turner, therefore, retained ultimate control over the hotel room. Consequently, Turner exercised dominion and control over the hotel room such that James could reasonably conclude that he maintained constructive possession of the firearm.

Turner fails to allege any facts sufficient to overcome the strong presumption in favor of an attorney's strategic choices made in the context of a guilty plea. *See Arvelo*, 788 F.3d at 1348–49. Because Turner has not demonstrated that James rendered ineffective assistance, he likewise cannot show that he would have changed his plea but for James's assistance. Additionally, in light of the strong evidence supporting a conclusion of constructive possession, Turner cannot show any prejudice resulting from his guilty plea. Turner thus fails to demonstrate that James rendered ineffective assistance in advising him to plead guilty.

## IV. Conclusion

For the foregoing reasons, Turner's § 2255 motion to vacate, set aside, or correct a sentence is due to be denied and this case dismissed with prejudice.

Rule 11 of the Rules Governing § 2255 Proceedings requires the Court to issue or deny a certificate of appealability when it enters a final order adverse to the

applicant. *See* Rule 11, Rules Governing § 2255 Proceedings. This Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-EL v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack*, 529 U.S. at 484). This Court finds that Turner's claims do not satisfy either standard.

A separate order consistent with this opinion will be entered.

**DONE** and **ORDERED** on February 16, 2023.

_____
L. Scott Coogler
United States District Judge
211913